**2008 BNH 021**

---

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

In re:

Russell W. Michaud,
Debtor

Bk. No. 08-12888-JMD
Chapter 13

Allen S. Holley and
Katharine Shaffer Holley,
Debtors

Bk. No. 08-12903-JMD
Chapter 13

Kelly Allen,
Debtor

Bk. No. 08-12949-JMD
Chapter 13

*Daniel R. Krislov, Esq.*
*Small & Lyons*
*Nashua, New Hampshire*
*Attorney for Russell W. Michaud and Kelly Allen*

*Leonard G. Deming, II, Esq.*
*Deming Law Office*
*Nashua, New Hampshire*
*Attorney for Allen and Katharine Holley*

*Lawrence P. Sumski, Esq.*
*Manchester, New Hampshire*
*Chapter 13 Trustee*

## MEMORANDUM OPINION

### I. INTRODUCTION

At issue in the above-captioned three cases, and in others pending before the Court, is whether the debtors' chapter 13 plans should be confirmed over the objection of Lawrence P. Sumski, the chapter 13 trustee (the "Trustee"), wherein the Trustee alleges that the debtors are not using all of their disposable income to fund their chapter 13 plans, as required by 11 U.S.C. §

1325(b)(1)(B),[1] because the debtors over withhold their federal income tax, as evidenced by their receipt of large federal income tax refunds last year. This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

### A. Michaud

Russell Michaud filed bankruptcy on October 6, 2008. Schedule I[2] shows gross monthly income for him and his non-debtor spouse of $6,635.94 as well as various deductions, including $623.96 per month for payroll taxes and Social Security, resulting in net monthly income of $5,048.85. Schedule J[3] shows monthly expenses of $4,918.85 for Michaud's family of four, resulting in monthly disposable income of $130.00. Form B22C[4] reveals that Michaud is a "below median" debtor, i.e. his family's income is below the median income for a family of his size in New Hampshire. Michaud's chapter 13 plan calls for thirty-six monthly payments of $130.00 or a total of $4,680.00 in plan payments. Administrative and secured creditor payments under the plan total $3,788.00, leaving $892.00 to be paid to Michaud's unsecured creditors who

---

[1] In this opinion the terms "Bankruptcy Code," "section" or "§" refer to title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 ("BAPCPA").

[2] Schedule I is called "Current Income of Individual Debtor(s)."

[3] Schedule J is called "Current Expenditures of Individual Debtor(s)."

[4] Form B22C is called "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income."

are owed $65,425.05,[5] for a dividend of just 1%. According to the Trustee, Michaud received a 2007 federal income tax refund of $5,284.00. The parties agree that Michaud has followed Internal Revenue Service ("IRS") guidelines with respect to withholding and has not claimed extra allowances on his W-4.

**B. Holley**

Allen and Katharine Holley filed a chapter 13 bankruptcy petition on October 7, 2008. According to Schedule I, the Holleys' monthly gross wages total $8,167.53, and from these wages they deduct, among other items, $2,042.28 for payroll taxes and Social Security, resulting in monthly net income of $5,700.72. The Holleys' family of six has monthly expenses of $5,103.77, according to Schedule J, resulting in monthly disposable income of $596.95. According to Form B22C, the Holleys are "above median" debtors and have monthly disposable income of $382.45. The Holleys have proposed a plan that provides for monthly plan payments of $383.00 for sixty months or total plan payments of $22,980.00. The Holleys are surrendering their residence; therefore, with the exception of the administrative claim of the Trustee in the estimated amount of $2,298.00, all plan payments will be used to pay the Holleys' unsecured creditors. Those creditors are owed $180,185.00[6] and will receive a dividend of 11%. According to the Trustee, the Holleys received a 2007 federal income tax refund of $2,461.00.

---

[5] This number is based upon the total listed in Schedule F and in the debtor's plan and is not based upon the claims actually filed by creditors. The deadline for non-governmental creditors to file a proof of claim is February 2, 2009.

[6] This number is based upon the figure in the Holleys' plan and it includes the unsecured claims listed in Schedule F plus the anticipated unsecured portion of its mortgagees' claims whose collateral is being surrendered. This number is not based upon the claims actually filed by creditors. The deadline for non-governmental creditors to file a proof of claim is February 2, 2009.

The parties agree that the Holleys have followed IRS guidelines with respect to withholding and have not claimed extra allowances on their W-4s.

### C. Allen

Kelly Allen sought bankruptcy protection on October 10, 2008. Allen and her non-debtor husband earn monthly gross wages of $8,989.15 and have various deductions, including $1,634.57 for payroll taxes and Social Security, resulting in monthly net income of $5,776.24 per Schedule I for this family of four. On Schedule J, Allen lists $5,676.24 in monthly expenses, leaving monthly disposable income of $100.00. Form B22C shows that Allen is "above median" and has negative monthly disposable income of $1,077.35. Allen's plan calls for sixty monthly payments of $100.00 for total plan payments of $6,000.00. Allen will pay $600.00 to the Trustee on account of administering her plan and the balance of $5,400.00 will be paid to Allen's unsecured creditors who are owed $47,152.00,[7] resulting in a dividend of 11%. According to the Trustee, Allen received a 2007 federal income tax refund of $6,269.00. The parties agree that Allen has followed IRS guidelines with respect to withholding and has not claimed extra allowances on her W-4.

## III. DISCUSSION

Section 1325(b)(1) of the Bankruptcy Code provides:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
>
> > (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

---

[7] Allen's plan lists $47,152.00 in unsecured claims. Schedule F shows $42,258.00. The deadline for non-governmental creditors to file a proof of claim is February 2, 2009.

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1). The term "disposable income" is defined in the Bankruptcy Code as:

> [C]urrent monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended–
>
> > (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
> >
> > (ii) for charitable contributions . . . in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
> >
> > (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b)(2). "Current monthly income" is defined in relevant part as:

> (A) [T]he average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period ending on–
>
> > (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii) . . . and
>
> (B) includes any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents . . . but excludes benefits received under the Social Security Act . . . .

11 U.S.C. § 101(10A).

Together, these Bankruptcy Code sections require debtors to submit their projected disposable income to fund their chapter 13 plan if the debtor does not propose a plan that will pay his or her unsecured creditors a 100% dividend. In the three cases at issue here, none of the

plans propose a 100% dividend, but rather the dividends range from 1% to 11%. Accordingly, the debtors must use all of their projected disposable income to pay the claims of their creditors. As explained by the Bankruptcy Appellate Panel for the First Circuit, the term "projected," as used in the statute, must be intended to have meaning and be given effect. Kibbe v. Sumski (In re Kibbe), 361 B.R. 302, 312-13 (B.A.P. 1st Cir. 2007). Thus, the income component of "projected disposable income" as set forth in § 1325(b)(1)(B) is "the anticipated actual income of the Debtor, subject to the Income Exclusions [set forth in §§ 101(10A) and 1325(b)(2)], during the plan commitment period." Id. at 314 (emphasis in original). The object of § 1325(b) is "to reach a reality-based determination of a debtor's capabilities to repay creditors." Id. at 315.

The Trustee has objected to confirmation of the plans in the Michaud, Holley, and Allen cases on the grounds that the debtors are not satisfying the projected disposable income requirement because their plans do not include projected annual tax refunds. While the debtors agree that some portion of future tax refunds might appropriately be considered part of their disposable income, the parties were unable to reach any sort of consensus on whether the receipt of such tax refunds should be turned over to the Trustee, and in what amount, or whether the debtors' monthly payments under their chapter 13 plans should be increased.

Debtors' tax expenses fall into the category of actual expenses, and debtors bear the burden of demonstrating that these expenses are actual, reasonable, and necessary. In re Raybon, 364 B.R. 587, 590 (Bankr. D.S.C. 2007). In all three cases before the Court, it appears that the taxes reflected in the debtors' Schedules J and on Form B22C are the debtors' tax withholding deductions as reflected in their pay records; however, these tax withholding deductions have not corresponded in the past, and may not necessarily correspond in the future, to the debtors'

ultimate tax liability as determined upon the filing of their tax returns for a particular tax year.[8] See id. The payment of taxes through the withholding of income is a necessary expense for debtors, and payment in the amount a debtor is allowed to withhold under applicable tax law is reasonable. Id. (citing 26 U.S.C. § 3402(a)(1) (mandating that a debtor's employer withhold from the debtor's wages the amount set forth in the IRS's tax table and pursuant to withholding exemptions allowed by law)). Without a debtor withholding the amount allowed by applicable law, a debtor could be liable for state and federal taxes if the debtor's situation were to change (e.g., changes to pay as a result of a raise, overtime, or a layoff, early withdrawal from a 401(k) plan, allowable charitable contributions, payment of interest on a variable rate home loan, or changes in the tax law), which might jeopardize the debtor's ability to perform the plan. Id.

This Court recognizes, and agrees with the court in In re Raybon, that debtors may not be able to accurately predict their tax liability for a five year period. Id. Debtors' inability to make such predictions regarding their actual tax liability does not relieve them, however, from the Bankruptcy Code's requirement that they apply all their disposable income to fund a plan when faced with an objection by the chapter 13 trustee. Because the amount withheld by debtors for

---

[8] The court in In re Balcerowski, 353 B.R. 581, 587 (Bankr. E.D. Wis. 2006), explained the taxing system as follows:

> Taxing authorities have created a system whereby wage-earners "withhold" certain amounts from their pay each pay period as a way to escrow anticipated tax payments. As the withholding system is set up, the taxpayer decides the exact amount to be withheld–taxpayers must estimate how much they think they will end up owing on their taxes in order to figure out how much to withhold. It is not uncommon for wage-earners to "over-withhold"–that is, to escrow more from their paychecks than what they are likely to owe.
>
> There are various reasons for taxpayers to do this–some do it out of a fear that they will owe more than they have estimated. Some do not understand how to calculate withholding, and over-withhold by accident. Still others do it as a sort of forced savings mechanism–the money comes out of their paychecks each pay period, and then they receive a tax refund the following year which they can choose to save, invest or spend.

payment of taxes does not necessarily correspond to their actual tax liability, the difference, i.e., the debtors' tax refund, must constitute income under § 1325(b) and, in general, must be devoted to the plan. See id. (citing both pre-BAPCPA and post-BAPCPA cases in support of this proposition); cf. In re Balcerowski, 353 B.R. 581, 588 (Bankr. E.D. Wis. 2006) ("The dollars that a debtor has withheld from his paycheck over and above the amount he owes the taxing authorities are not tax expense dollars. For this reason, the debtor cannot include those dollars as a 'tax expense' that he can deduct to reduce his disposable income. Instead, the debtor must subtract from his income the average monthly tax expense that he 'actually incur[s]'–just as he is directed to do in the instructions for Line 30 of Form B22C."); In re Bernard, No. 08-40996-JBR, 2008 WL 5050132 (Bankr. D. Mass. Nov. 22, 2008) (concluding in the chapter 7 context that debtors may not deduct on Form B22A the amount of tax they have withheld from their paychecks but rather must deduct the actual amount of the tax liability incurred for the year prior to filing and then make adjustments, upward or downward, as necessary).

In his objections to confirmation of the plans filed in the Michaud, Holley, and Allen cases, the Trustee argues that any tax refund in excess of $1,800.00 constitutes disposable income and must be contributed to the plan. The Court is hesitant to establish such a bright line rule. In the Court's view, it is appropriate to allow debtors to retain some amount of a tax refund in order to provide the debtors with some cushion against unanticipated expenses that arise in the course of everyday life and to provide some flexibility to debtors as they attempt to create a budget for the duration of a three-to-five year plan. See Navejer v. King, No. 07-C-654, 2007 WL 3129731, at *1 (E.D. Wis. Oct. 22, 2007) ("In this district, the long-standing practice is to include half of the debtors' tax refund in the plan. This is done in recognition of the fact that unexpected expenses may arise during the course of the plan."); but see Raybon, 364 B.R. at 591

(citing cases holding that all of an income tax refund is disposable income to be paid to the trustee for distribution to creditors).

The issue for the Court is what is a permissible amount for debtors to retain. In the Court's view, the amount of an income tax refund that may be retained depends upon the particular circumstances in a particular case and may involve consideration of the amount of the debtor's tax refund, the amount of the refund in comparison to the total tax due, the debtor's yearly income and expenses, the debtor's overall budget, the number and nature of the debtor's dependents, the amount being paid into the debtor's plan, the dividend being paid to unsecured creditors, and the length of the debtor's plan. In other words, it will depend upon the facts of a specific case and must be reviewed on a case-by-case basis at the time of confirmation, much in the same way this Court made determinations pre-BAPCPA as to whether 401(k) contributions and repayments were reasonably necessary expenses or more properly considered part of a debtor's disposable income.[9] See In re Husemann, 2001 BNH 039 (explaining that "it is within the Court's discretion to determine whether retirement contributions [to a 401(k) plan] and loan repayments are reasonably necessary expenses for an individual debtor based on the particular circumstances confronting that debtor"); In re Field, 190 B.R. 16, 19 (Bankr. D.N.H. 1995) (discussing the debtor's ability to make retirement contributions while in chapter 13).

In the first instance, a debtor may propose what amount, if any, of a future income tax refund may be retained for unanticipated expenses by providing in the chapter 13 plan that any refund in excess of that amount is to be paid to the chapter 13 trustee for distribution to creditors. Any such provision shall be subject to review and objection by the chapter 13 trustee or other

---

[9] Post-BAPCPA, neither 401(k) contributions nor 401(k) loan payments constitute disposable income under § 1325(b). In re Njuguna, 357 B.R. 689, 691 (Bankr. D.N.H. 2006).

party in interest. Ultimately such a provision must be approved by the Court through the plan confirmation process. Once approved, it is subject to modification after confirmation, as any other provision of a confirmed chapter 13 plan may be modified. 11 U.S.C. § 1329.

In order to avoid annual postpetition modifications of chapter 13 plans upon the filing of a tax return reflecting a refund, debtors in this district shall be required to submit such tax refunds to the Trustee no later than fourteen days after the receipt of such a refund, as part of the funding of the debtor's plan.[10] See Raybon, 364 B.R. at 591. If the debtors believe that retention of some or all of the income tax refund payable to the Trustee is necessary for the maintenance and support of the debtors or their dependents within the meaning of the Bankruptcy Code, the debtors may make a motion, within thirty days after they file their tax return showing an entitlement to a tax refund, seeking an order modifying their obligations under their plan and the confirmation order. See id. at 592; see also Navejer, 2007 WL 3129731, at *2 ("To the extent that this allowance [of keeping half the debtor's tax refund] is inadequate, the debtor can petition the trustee and ultimately the court to allow him to keep the remainder of his tax refund for a particular year.").

**A. Michaud**

Michaud and his non-debtor spouse have gross annual income of $79,631.28. Schedule I shows annual payments of $7,487.52 for payroll taxes and Social Security. Last year, Michaud received a federal income tax refund of $5,284.00. Michaud's chapter 13 plan calls for thirty-six monthly payments of $130.00 or a total of $4,680.00 in plan payments, with $3,788.00 being paid to administrative and secured creditors and just $892.00 being paid to unsecured creditors,

[10] Debtors in this district already are required to provide copies of their tax returns to the Trustee within seven days of its filing with the taxing authority. See LBF 3015-1A § 11.A (effective January 1, 2009).

who are owed $65,425.05, resulting in a dividend of 1%. Based upon these facts, the Court finds the retention of such a large income tax refund unreasonable, and such refunds must be considered part of the debtor's disposable income. Applying just one refund in the amount of $5,000.00 to Michaud's plan would increase the payments to unsecured creditors over three years by $4,500.00[11] and would result in a dividend of 8%. Payments of $5,000.00 for each additional year of the debtor's three year plan would result in total plan payments to the unsecureds of $14,392.00[12] and would increase the dividend to 22%. Clearly, the debtor's plan must provide for the turnover of some portion of his tax refunds to the Trustee for the duration of his plan.

The Court notes that Michaud proposes to use all of the disposable income shown on Schedule J to fund his plan, i.e., $130.00. Upon review of Schedule J the Court finds no excessive expenses and finds little room for contingencies. Therefore, based on the facts of this case, the Court finds that retention of a tax refund in the amount of $1,200.00 per year would be reasonable as this would effectively provide the debtor and his family with a cushion of $100.00 per month to cover unexpected and unplanned expenses. Accordingly, the Court shall sustain the Trustee's objection to Michaud's plan and shall deny confirmation. Absent other issues or objections not yet raised by the Trustee or creditors, the Court would likely confirm an amended plan that provides for plan payments of $130.00 per month plus any tax refund in excess of $1,200.00 each year.

---

[11] $5,000.00 less the 10% estimated administrative claim of the Trustee.

[12] $5,000.00 per year for 3 years totals $15,000.00, less the Trustee's administrative claim of $1,500.00, totals $13,500.00 plus the $892.00 provided for in the current plan, for a total payment of $14,392.00.

**B. Holley**

Allen and Katharine Holley filed a chapter 13 bankruptcy petition on October 7, 2008. According to Schedule I, the Holleys earn $98,010.36 per year. From their paychecks, they have deducted $2,042.28 for payroll taxes and Social Security. Form B22C lists the debtors' monthly tax expenses at $1,473.00. Last year, the debtors received a 2007 federal income tax refund of $2,461.00.

The Holleys are "above median" debtors who have monthly disposable income of $382.45 pursuant to Form B22C. Schedule J shows monthly disposable income of $596.95. The Holleys have proposed a plan that provides for monthly plan payments of $383.00 for sixty months or total plan payments of $22,980.00. Because the Holleys are surrendering their residence, plan payments will be used to pay only the Holleys' unsecured creditors who are owed $180,185.00. This results in a dividend of 11%. If the Debtors were to contribute to their plan annual income tax refunds of $2,000.00 during their five year commitment period, the amount distributed to unsecured creditors would increase by $9,000.00[13] and the dividend they would receive would increase from 11% to 16%.

Upon a close review of Schedule J, the Court finds that the debtors' monthly budget is low with respect to some items, e.g., rent ($950.00), electricity ($0), heating fuel ($0), water ($0), and sewer ($0), but high with respect to other items, e.g., transportation ($535.75), charitable contributions ($250.00), and "Household Goods, School Supplies, Tolls, Etc." ($1,000.00). The Court notes as well that the difference between the plan payment of $383.00 and disposable income under Schedule J of $596.95 is more than $200.00 per month. Based

---

[13] $2,000.00 per year for 5 years totals $10,000.00, less the Trustee's administrative expense claim of $1,000.00, for a total of $9,000.00.

upon this review, it is clear to the Court that the Holleys have additional funds that could be contributed to their plan and therefore they are not using all of their disposable income to fund their plan as required. For that reason, the Court shall sustain the Trustee's objection and confirmation of the Holleys' plan shall be denied. The Court has concerns regarding the nature and amount of some of the Holleys' expenses and the large cushion they already have built into their budget by using the Form B22C number and not the Schedule J number for their plan payment. Based on the record before it, the Court is unable to determine what amount, if any, may be retained by the Holleys from any future tax refund. For that reason, the Court shall schedule a further hearing on confirmation if the debtors file an amended plan.

**C. Allen**

Allen is an "above median" debtor. She and her non-debtor spouse earn $107,869.80 annually. Schedule I reflects annual payroll tax and Social Security deductions of $19,614.84. Form B22C shows tax expenses of $22,549.08 on an annual basis. Allen received a 2007 federal income tax refund of $6,269.00. Form B22C shows negative monthly disposable income. Schedule J reflects monthly disposable income of $100.00. Allen's plan calls for sixty monthly payments of $100.00 for total plan payments of $6,000.00, which after payment of $600.00 to the Trustee on account of administering her plan, results in $5,400.00 being paid to unsecured creditors. These creditors are owed $47,152.00 and will receive a dividend of 11%.

The retention of tax refunds in excess of $6,000.00 per year while unsecured creditors receive only $5,400.00 over the span of five years is unreasonable, and such refunds must be considered part of the debtor's disposable income. If Allen were to contribute annually an additional $5,000.00 to her plan over its five year term, with such funds attributable to her tax

refunds, Allen's unsecured creditors would receive an additional $22,500.00,[14] which would boost their dividend to 59%.

At issue is what portion of Allen's tax refunds must be turned over to the Trustee for the duration of her plan in order to meet the disposable income requirement of § 1325(b)(2). The debtor's schedules show reasonable expenses. Her plan proposes to use all of the disposable income shown on Schedule J, i.e., $100.00 per month. As in Michaud's case, Allen's budget shows little cushion. Therefore, based on the facts of this case, the Court finds that retention of a tax refund in the amount of $1,200.00 per year is reasonable, as this effectively provides the debtor and her family with $100.00 per month to cover unexpected and unplanned expenses. As the debtor's plan makes no provision to include the disposable income represented by tax refunds in excess of $1,200.00 per year, the Court shall sustain the Trustee's objection to Allen's plan and shall deny confirmation. Absent other issues or objections not yet raised by the Trustee or by Allen's creditors, the Court would likely confirm an amended plan that provides for plan payments of $100.00 per month plus any tax refund in excess of $1,200.00 each year.

## IV. CONCLUSION

For the reasons set forth above, the Trustee's objections to confirmation of these debtors' plans shall be sustained, and confirmation of the plans filed by Michaud, Allen, and the Holleys shall be denied as the debtors' income tax refunds constitute disposable income within the meaning of § 1325(b)(2), some portion of which must be used to fund their plans in accordance with § 1325(b)(1). Absent special circumstances being established by the debtor, confirmation

[14] $5,000.00 per year for 5 years totals $25,000.00, less the Trustee's administrative claim of $2,500.00, resulting in a total of $22,500.00 for unsecured creditors.

of chapter 13 plans in this district that fail to contain a provision in the plan payment section of the plan, requiring the debtor to pay an appropriate portion of his or her tax refunds to the Trustee within fourteen days of receipt, shall be denied if an objection has been filed by the Trustee or an unsecured creditor under § 1325(b)(1). A debtor may file a motion in any given year, prior to receipt of a tax refund, seeking relief from the turnover requirement, based upon extenuating circumstances established by the debtor for that particular year.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue separate orders consistent with this opinion.

ENTERED at Manchester, New Hampshire.

Date: December 30, 2008

/s/ J. Michael Deasy
J. Michael Deasy
Bankruptcy Judge